# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **JOSEPH T. BAILEY,** | CASE NO. 2:08-cv-839 |
| | JUDGE HOLSCHUH |
| Petitioner, | MAGISTRATE JUDGE KEMP |
| v. | |
| **MICHELE EBERLIN, Warden,** | |
| Respondent. | |

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's motion to dismiss, petitioner's traverse and supplemental exhibits, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that respondent's motion to dismiss be **DENIED**, and that this action be **DISMISSED** without prejudice as unexhausted unless petitioner deletes his unexhausted claims of ineffective assistance of counsel from the petition within ten (10) days and proceeds on his remaining exhausted claims. Petitioner's request for an evidentiary hearing is **DENIED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Seventh District Court of Appeals summarized the facts and procedural history of this case as follows:

> Joseph Bailey, was convicted of felonious assault in violation of R.C. 2903.11(A)(1) following his jury trial in the Jefferson County Court of Common Pleas. He was sentenced to eight years in prison without an opportunity for early release and five years of post release control. (June 15, 2006, Judgment Entry of Sentence.)
>
> The jury unanimously concluded that Appellant inflicted permanent disabling injuries to his live-in girlfriend's fourteen-month-old

daughter. The testimony revealed that Appellant had beaten and shaken the child, causing permanent brain damage that required removal of approximately 20% of her brain, permanent paralysis, and blindness in one eye. Appellant testified that the child's injuries occurred when he accidentally fell on top of the girl.
\*\*\*

Appellant testified that on the night of August 13, 2005, he came home to the residence that he shared with Theresa Bunting and two of her children in Wintersville, Ohio. Theresa was working that night, so Appellant checked on the fourteen-month old.

Appellant alleged that the toddler was suffering from diarrhea. Thus, he removed her diaper and took her to the bathroom to clean her. Appellant claims that he did not turn on the hallway light, and upon entering the bathroom, he tripped on a stroller that was in the doorway. Appellant claims that the child's head struck the door frame and that they both then fell onto the floor. Appellant says he fell on top of the girl, and his collar bone struck her in the temple. (Tr., pp. 309-313.)

Appellant claims that afterward, he consoled the child and that she appeared fine when he eventually put her to bed. He called Theresa at work to alert her to their fall. He says he checked on the girl sometime later and noticed that she had rolled over and vomited. He again checked on her when Theresa arrived home from work, and the toddler appeared fine. The next morning at about 6 a.m., Appellant checked on her and she had a high fever. Appellant woke Theresa and they rushed the child to the emergency room at Trinity West in Steubenville, Ohio. (Tr., pp. 315-319.)

Appellant denied ever physically disciplining Theresa's children, and he denied ever striking or hitting Theresa or the children. (Tr., pp. 303-304.)

Upon arriving at Trinity West, Appellant was carrying the toddler who looked like a "rag doll, limp, placid[.]" (Tr., p. 158.) Dr. Roig, the emergency room physician, testified that when Appellant gave the child's initial medical symptoms he said she had diarrhea, vomiting, high fever, and was difficult to arouse. Dr. Roig described the child as "[v]ery traumatized," and after ventilating her, Dr. Roig stated that

2

it was easy to see that she had suffered a very significant head injury. (Tr. p. 158.) She had bruises on both sides of her head, her cheek, and odd bruises on her chest that looked like "thumb print bruises." She also had bruising on both sides of her perineal or vaginal and anus areas. (Tr., pp. 157, 158, 159, 163-165.)

Dr. Roig also noted that the girl had "brown pupil," which is indicative of a subdural hematoma. Upon feeling her head, Dr. Roig could feel that her skull was disjointed or fractured. The fracture was significant; it felt like, "pieces of concrete were laying off of each other." (Tr., p. 166.) At the time of presentment to Dr. Roig, the child was taking three to five breaths per minute whereas a healthy child of her age takes 25 to 35 breaths per minute. (Tr., pp. 165, 168.)

When Dr. Roig pressed Appellant further as to how the toddler received these injuries, Appellant shrugged his shoulders. Only then did Appellant reveal this story that he fell on top of her the night before. (Tr., pp. 169-170.) Dr. Roig's three diagnoses of the child included pulmonary arrest, clinical subdural hemorrhage, and suspected child abuse with closed head injuries. Dr. Roig testified that she had atypical bruising and distinctive hand marks on her face. Dr. Roig also concluded that her multiple abnormal injuries were inconsistent with Appellant's story that he had fallen on top of her. The child was, "as close to death as you come without dying." (Tr., pp. 166, 172-175.) She was subsequently life flighted to Pittsburgh.

Theresa Bunting, the victim's mother, testified that after these injuries, the child was admitted to the Pittsburgh hospital for about two and a half to three months and she underwent several surgeries. At the time of trial, the child could no longer walk, talk, or even crawl. She had little to no vision in her left eye. (Tr., pp. 206-208, 210.)

Contrary to Appellant's testimony, Theresa testified that it was very rare for him to check on the toddler during the six-month period that they lived together. (Tr., pp. 205-206) Theresa never saw Appellant physically abuse any of her children. However, in the past she had noticed bruising on her daughter after she had been in Appellant's care.

The victim's older brother testified. He was home with his sister and Appellant on the night in question. He was watching television when Appellant and his sister were in the bathroom. He recalled hearing thumping noises and the victim crying for about ten minutes. They then went into the child's room and her brother heard more thumping and more crying. Had Appellant tripped and fallen in the hallway that night, the boy thought he would have seen or heard it based on where he was sitting. However, the boy also testified that Appellant had never hurt him. (Tr., pp. 217-218, 224-225, 233-234.)

Jefferson County Sheriff Fred Abdalla testified. He described his interview with Appellant during which Appellant said he fell on top of the girl after tripping over a stroller. (Tr., pp. 100-106.) Appellant admitted to Abdalla that he is unable to control his temper, but that he did not cause all of the girl's bruises, indicating that she falls often. Further, Appellant told Abdalla that the bruises on her diaper area were from him wiping too hard to clean her diarrhea. Appellant also said something to the effect that he did not remember how many times he had slapped the child that night, but he did not slap her hard. Appellant then asked for counseling. (Tr., pp. 106-108.)

Appellant wrote out his version of the facts on the evening in question in which he stated that he accidentally fell on top of the child. (Tr., pp. 109-110.)

Dr. Rachel Berger from the children's hospital in Pittsburgh, a specialist who studies and researches the affects of inflicted versus non-inflicted brain injuries on children, also testified. She consulted on the victim's case. (Tr., pp. 246-252.)

Dr. Berger examined the girl after her first surgery. She was still on a ventilator at the time. Dr. Berger showed the jury the CT scan of a normal child the victim's age and compared it to the victim's, which showed significant brain swelling, noting that her brain had very little oxygen for a prolonged time. Dr. Berger explained that the surgeons had to remove two of the lobes in her brain in order to give it room to swell and prevent her death. Part of her skull was also removed. Dr. Berger concluded in her report that the girl's injuries were "NOT" consistent with Appellant falling on top of her. Dr. Berger concluded that her injuries were a result of physical abuse. (Tr., pp. 255, 259, 265-269, 274, 276.)

> Appellant takes issue with Dr. Berger's testimony in part. Appellant alleges that Dr. Berger referenced a study entitled the Pounder Case Report in her testimony, yet she did not actually rely on this report in formulating her opinion in this case. (Tr., pp. 295-296.) As such, Appellant claims that the reference and discussion of this report were prejudicial.
>
> Per Dr. Berger's testimony, the Pounder Case Report is a record of the physical injuries sustained by Israeli soldiers as a result of shaking as a form of torture. Based on the fact that there are rarely witnesses to this type of abuse and little to no studies documenting the actual affects of shaking, this report was discussed to explain the effects of shaking on humans. (Tr., p. 296 .) Thus, although Dr. Berger did not directly state that she relied on this report, that conclusion is evident based on the rest of her testimony. Hence, it is difficult to discern just what prejudice Appellant now claims. In addition, if Dr. Berger's reference to this report was problematical, Appellant has waived his argument to this effect because Appellant's counsel did not object to this testimony at trial. Additionally, based on the other evidence against him, even if it was error for Dr. Berger to refer to this report, he cannot show that he was prejudiced as a result of this testimony. Thus, any alleged error would be harmless.
>
> In his defense, Appellant presented the testimony of his sister-in-law and a good friend. Both women testified that he was good with their respective children and that he was not abusive. (Tr., pp. 397, 402-403.) Neither, however, was present on the night of the victim's injuries.
>
> As earlier discussed, on rebuttal Theresa's nephew testified that he had seen Appellant shake the victim when no one else was around. Appellant would yell at the child girl to "stop crying" while he was shaking her. (Tr., pp. 417-420.)

*State v. Bailey*, 2007 WL 2758607 (Ohio App. 7th Dist. September 20, 2007). Represented by new counsel, petitioner filed a timely appeal. He asserted the following assignments of error:

> 1. THE DEFENDANT WAS DENIED HIS RIGHT TO A FAIR AND IMPARTIAL TRIAL BY A JURY OF HIS PEERS ABSENT A CHANGE OF VENUE BECAUSE OF THE EXTREME

> AMOUNT OF PRE-TRIAL PUBLICITY RENDERED THE ENTIRE JURY POOL POLLUTED BEYOND A POINT WHERE VOIR DIRE WAS ABLE TO CORRECT.
>
> 2. THE INDICTMENT RETURNED ON OCTOBER 15, 2005 IS DEFECTIVE ON IT'S [SIC] FACE BECAUSE IT RESTRICTS THE DATE OF THE ACCUSED CRIMINAL ACTIVITY TO AUGUST 13, 2005 WHEN THE STATE'S CASE IN CHIEF AND REBUTTAL WITNESSES TESTIFIED TO A CONTINUING PATTERN OF CRIMINAL ACTIVITY BEYOND THE LETTER OF THE INDICTMENT.
>
> 3. THE JURY'S VERDICT IN THE DEFENDANT-APPELLANT JOSEPH BAILEY'S CONVICTION OF FELONIOUS ASSAULT CONTRARY TO O.R.C. §2903.11(A)(1) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.
>
> 4. SENTENCING DEFENDANT-APPELLANT TO THE MAXIMUM ALLOWABLE SENTENCE UNDER THE STATUTE GOES AGAINST THE CURRENT SENTENCING GUIDELINES TO BE FOLLOWED AS OUTLINED IN THE OHIO REVISED CODE.

*See id.* On September 20, 2007, the appellate court affirmed the judgment of the trial court. *Id.* Petitioner did not file a timely appeal. On November 20, 2007, he filed a motion for delayed appeal. *Exhibit 7 to Motion to Dismiss*. On January 23, 2008, the Ohio Supreme Court denied petitioner's motion for delayed appeal. *State v. Bailey*, 116 Ohio St.3d 1472 (2008).

On September 4, 2008, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

1. Manifest weight of the evidence.

> In the case at bar, as will soon be discovered, Mr. Bailey's trial did not support the jur[y's] findings. There was undeniable insufficient evidence to support a guilty verdict. There is no record support to sustain a felonious assault charge.
>
> 2. Denied a fair and impartial trial based strictly upon the fact that Mr. Bailey's trial was highly publicized and it was virtually impossible to receive an impartial jury.
>
> 3. Maximum sentence.
>
> Mr. Bailey received the maximum sentence which is against clear and well settled law. Especially for being a first time offender.
>
> 4. Defective indictment.
>
> 5. Ineffective assistance of trial and appellate attorney.
>
> Trial and appellate attorneys did not perform as mandated by clear and well settled law thereby severely harming petitioner.

It is the position of the respondent that all of petitioner's claims are procedurally defaulted.

## EXHAUSTION

Before a federal habeas court may grant relief, a state prisoner must exhaust his available remedies in the state courts. *Castille v. Peoples,* 489 U.S. 346, 349 (1989); *Silverburg v. Evitts,* 993 F.2d 124, 126 (6th Cir.1993). If a habeas petitioner has the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(b), (c). Moreover, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the exhaustion requirement. *O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999); *Manning v. Alexander,* 912 F.2d 878, 881 (6th Cir.1990). Where alternative state remedies are available to consider the
7

same claim, exhaustion of one of these remedies is all that is necessary. A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he seeks to present for federal habeas review. *Prather v. Rees,* 822 F.2d 1418, 1420 n. 3 (6th Cir.1987).

Petitioner has never presented any claim of ineffective assistance of counsel to the state courts. To the extent that petitioner asserts a claim of ineffective assistance of trial counsel based upon matters that are readily apparent from the face of the record, such claim should have been raised on direct appeal, but was not. Further, petitioner may now no longer present this claim to the state courts under Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967). Therefore, absent a showing of cause and prejudice, such claim appears to be procedurally defaulted. *See Maupin v. Smith*, 785 F.2d 136, 138 (6th Cir. 1986). To the extent that petitioner may be raising a claim of ineffective assistance of trial counsel based upon matters that are not readily apparent from the face of the record, such a claim properly would be raised in a petition for post conviction relief pursuant to O.R.C. §2953.21. The time period to file such an action has already expired. Therefore, to obtain review of this claim on the merits, petitioner must meet the requirements for filing a delayed post conviction under O.R.C. §2953.23, which provides:

> (A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:
>
> (1) Either of the following applies:
>
> (a) The petitioner shows that the petitioner was unavoidably

> prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.
>
> (b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
>
> (2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.
>
> (B) An order awarding or denying relief sought in a petition filed pursuant to section 2953.21 of the Revised Code is a final judgment and may be appealed pursuant to Chapter 2953. of the Revised Code.

The record does not reflect that petitioner can meet this standard here.

However, petitioner's claim of ineffective assistance of appellate counsel remains unexhausted. Although the time period to file an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B) also has now expired, petitioner may still pursue a delayed application to reopen the appeal. Ohio's Rule 26(B) provides in relevant part:

> (B) Application for reopening
>
> (1) A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.
>
> (2) An application for reopening shall contain all of the following:
>
> (a) The appellate case number in which reopening is sought and the

9

trial court case number or numbers from which the appeal was taken;

(b) A showing of good cause for untimely filing if the application is filed more than ninety days after journalization of the appellate judgment.

(c) One or more assignments of error or arguments in support of assignments of error that previously were not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation;

Further, the record does not reflect that a stay of proceedings is appropriate. *Rhines v. Weber*, 544 U.S. 269, 277 (2005):

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

*Id.*

Petitioner does not explain why he has failed, to date, to raise his ineffective assistance of appellate counsel claim in the state courts. Additionally, he does not provide any specificity as to the nature of this claim. Under these circumstances, the record does not reflect either that he has good cause for his failure to exhaust state court remedies, or that his unexhausted claim is potentially meritorious. *See id.*, at 277-78; *see also Neville v. Dretke,* 423 F.3d 474, 480 (5th Cir.2005)(holding that claims are "plainly meritless" for purposes of deciding whether to grant a stay of habeas corpus proceedings where the petitioner is procedurally barred from raising his unexhausted claims in the state courts).

Therefore, the Magistrate Judge **RECOMMENDS** that respondent's motion to dismiss be **DENIED**, and that this action be **DISMISSED** without prejudice as unexhausted unless petitioner

deletes his unexhausted claim of ineffective assistance of appellate counsel within ten (10) days and proceeds on his remaining exhausted claims. Petitioner's request for an evidentiary hearing is **DENIED.**

If any party objects to this *Report and Recommendation,* that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

                                                     /s/ Terence P. Kemp
                                                     United States Magistrate Judge